UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ADRIAN SALAZAR HERNANDEZ, | Case No.  1:26-cv-00427-BLW |
| Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| RUBEN LEYVA, Field Office Director of Enforcement and Removal Operations, Salt Lake City Field Office, Immigration and Customs Enforcement; KENNETH PORTER, Director of the Boise U.S. Immigration and Customs Enforcement Field Sub-Office; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; TODD BLANCHE, U.S. Attorney General; and MIKE HOLLINSHEAD, Sheriff of Elmore County, | |
| Respondents. | |

**INTRODUCTION**

Before the Court is Petitioner Adrian Salazar Hernandez's Petition for Writ of

Habeas Corpus under 28 U.S.C. § 2241 (Dkt. 1). Petitioner is currently in the custody of

Immigration and Customs Enforcement (ICE) and is held at the Washington County jail.

For the reasons explained below, the Court will grant the Petition, order Petitioner's

immediate release from custody, and deny his motion for a temporary restraining order as

moot.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

Petitioner is a native and citizen of Mexico. *Petition* ¶ 17, Dkt. 1. According to ICE records, Petitioner's first encounter with ICE came on June 21, 2025, when officers located him at the Canyon County jail in Caldwell, Idaho, following his arrest by local police for domestic violence without traumatic injury and false imprisonment. *Gov't Resp.*, p. 2, Dkt. 6. During processing, Petitioner said he entered the United States sometime in 2021 by crossing the border into Texas without inspection. ICE lodged an immigration detainer with the jail. *Id.* The Petition alleges that Petitioner entered in November 2020. Petition ¶¶ 17, 23.

On August 15, 2025, ICE lifted the detainer, citing a lack of bed space. Three days later, ICE issued Petitioner a Notice to Appear. Because that notice was not properly served on the immigration court, ICE issued a new Notice to Appear on September 17, 2025, and mailed it to Petitioner. *Id.*

In the meantime, Petitioner's state criminal case resolved. Prosecutors reduced the domestic violence charge to disturbing the peace, and on November 19, 2025, in case number CR14-25-12720, Petitioner was convicted of disturbing the peace and false imprisonment, both misdemeanors. He was sentenced to 180 days in jail, with 125 days suspended and the other 55 days credited, placed on 12 months' probation, and ordered to pay court costs and a fine. *Id.* at 2–3.

On March 9, 2026, Petitioner filed an application for asylum and withholding of removal, and those proceedings remain pending. On May 17, 2026, the Mountain Home Police Department arrested Petitioner for misdemeanor driving under the influence. That

MEMORANDUM DECISION AND ORDER - 2

charge is pending; the state court released Petitioner on a $500 bond, and trial is set for October 2026. *Petition* ¶ 2. On July 8, 2026—according to Petitioner, as he was leaving a probation check-in appointment—ICE took him into custody. *Id.* ¶ 26. Respondents report that he remains in ICE custody at the Washington County jail. *Gov't Resp.*, p. 3.[1] Petitioner has a United States citizen partner and a one-year-old United States citizen daughter, who he says rely on him for support. Petition ¶ 27; Reply, p. 5, Dkt. 9.

Petitioner contends his detention is unlawful because the Department of Homeland Security (DHS) and the Executive Office for Immigration Review (EOIR) have wrongly treated him as an applicant for admission subject to mandatory detention, without the possibility of bond, under 8 U.S.C. § 1225(b)(2)(A). He maintains that § 1226(a) governs his detention and that he is entitled to a bond hearing. *Id.* ¶¶ 6–10. Petitioner has also filed a Motion for Temporary Restraining Order (Dkt. 2), seeking his immediate release and related interim relief pending resolution of the Petition.

## LEGAL STANDARD

A federal court may grant a writ of habeas corpus to a person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). Throughout our nation's history, habeas review "has remained a critical check on the Executive, ensuring that it does not detain

---

[1] The Petition, filed the day of the arrest, alleged that he was held at or in transport to the Elmore County jail. *Petition* ¶¶ 2, 11.

MEMORANDUM DECISION AND ORDER - 3

individuals except in accordance with law." *Id.*

## ANALYSIS

This Petition presents a statutory question the Court has now resolved dozens of times over the past several months. The steady flow of cases traces to a policy shift by DHS and EOIR concerning the application of 8 U.S.C. § 1225, which mandates detention—without the possibility of a bond hearing—for a limited class of noncitizens. *See, e.g.*, *Quijada Cordoba v. Knight*, 809 F. Supp. 3d 1110, 1122 (D. Idaho 2025); *Moctezuma Macias v. Henkey*, No. 1:25-cv-00741-BLW, 2026 WL 221450, at *1–2 (D. Idaho Jan. 27, 2026); *Simental v. Knight,* No. 1:26-CV-00330-DCN, 2026 WL 1638967, at *2 (D. Idaho June 5, 2026). The Court need not repeat the full analysis here but will summarize it briefly before turning to the question of remedy.

As the Court has explained in its earlier decisions, noncitizens facing possible immigration detention have historically been held under one of two statutes. Section 1225 governs those "seeking admission into the country"—noncitizens apprehended at or near the border—and provides no opportunity for a bond hearing. Noncitizens already living in the United States, by contrast, have been detained under 8 U.S.C. § 1226, which makes detention discretionary and provides for bond hearings so that detainees who pose neither a danger to the community nor a risk of flight may be released. *See generally Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017). That framework reflects a longstanding distinction between noncitizens residing in this country and those who have not yet entered it. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

DHS moved to eliminate that distinction in July 2025. On July 8, 2025, ICE issued

its "Interim Guidance Regarding Detention Authority for Applicants for Admission," directing that every noncitizen who entered the country without inspection be treated as subject to mandatory detention under § 1225(b)(2)(A), regardless of when they were apprehended or how long they had lived in the United States. The Board of Immigration Appeals adopted the same position on September 5, 2025, holding in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), that immigration judges may not conduct bond hearings for noncitizens who entered without admission because they are "applicants for admission" subject to mandatory detention. District courts across the country have since concluded that this interpretation violates both the Immigration and Nationality Act and the due process rights of detained noncitizens. *See, e.g., Briceno Solano v. Mason*, 818 F. Supp. 3d 802, 835 (S.D. W. Va. 2026); *Selvin Adonay E.M. v. Noem*, 817 F. Supp. 3d 720, 731 (D. Minn. 2025).

This Court has reached that same conclusion in a long line of substantively identical habeas cases and has repeatedly rejected Respondents' reading of § 1225. Respondents offer no new argument here—they lodge only a standing objection to preserve the issue for appeal—and there is no need to restate the reasoning already set out at length in the Court's prior decisions. *See, e.g.*, *Quijada Cordoba*, 809 F. Supp. 3d at 1122. The Court again concludes that Petitioner's detention is governed by § 1226(a) and that his mandatory detention under § 1225 is unlawful. *Id*. The only remaining question is the appropriate remedy.

The question of remedy is more difficult here than in other cases the Court has recently decided. In many of those cases, the Court ordered immediate release. *See, e.g.,*

*Sanchez v. Leyva*, No. 1:26-cv-00361-BLW, 2026 WL 1831426, at *2 (D. Idaho June 25, 2026). But the petitioners in those cases generally presented no meaningful indicia of danger to the community. *Id.; see also Quijada Cordoba*, 809 F. Supp. 3d at 1122 ("To the contrary, Petitioner's lack of criminal record, long residence in the United States, and familial ties to the United States all indicate that he is neither a danger nor a flight risk.").

Here, however, Respondents argue that Petitioner's criminal history—his misdemeanor convictions for disturbing the peace and false imprisonment arising from a domestic violence arrest, and his pending charge for driving under the influence— demonstrates "his growing danger to the community." *Gov't Resp.*, p. 3, Dkt. 6. On that basis, they ask the Court to leave Petitioner in custody and remand to ICE so that the field office director may make a detention determination in the first instance, *see* 8 C.F.R. § 236.1(c)(8), with a bond hearing before an immigration judge to follow only if Petitioner requests one. 8 C.F.R. § 236.1(d)(1). The Court declines to take that approach and will instead order Petitioner's immediate release.

First, the Court cannot ignore the circumstances under which these cases arise. Respondents steadfastly refuse to abandon their policy despite this Court having deemed it unlawful in dozens of cases—and they presumably will continue to enforce their interpretation of § 1225 on immigrant detainees until the Ninth Circuit issues a binding ruling. *Sanchez*, 2026 WL 1831426, at *2. The inevitable outcome of this quagmire is that "[d]etainees will continue to file nearly identical habeas petitions then sit in jail waiting for a judicial decision," which "in itself represents a substantial deprivation of liberty, and ordering a bond hearing instead of release would further exacerbate that

MEMORANDUM DECISION AND ORDER - 6

delay." *Id.* Remanding to ICE would only add to that delay, leaving Petitioner in custody while the agency whose detention this Court has held unlawful decides in the first instance whether he should remain there.

Second, the government has already assessed—at least implicitly—whether Petitioner poses a danger to the community or a flight risk, and it resolved that question in his favor. ICE lodged a detainer against Petitioner in June 2025, lifted it in August 2025, and then did not seek to detain him again for nearly a year, during which Petitioner remained at liberty. As ICE was not authorized to lift the detainer and allow Petitioner's release if it considered him a danger to the community or a flight risk, "the Court must infer from [Petitioner's] release that ICE determined [he] was neither." *Cf. Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) (explaining petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community").

Respondents attribute the lifted detainer to a lack of bed space, but nothing in the record suggests ICE viewed Petitioner as a danger at the time. Nor did ICE treat him as one afterward. His misdemeanor convictions were entered in November 2025, and his DUI arrest occurred in May 2026, yet ICE did not detain him until July 8, 2026—as he was leaving a probation check-in appointment. If the government truly believed Petitioner was dangerous, it could have detained him at any point along the way. *See Frutos Artega v. Leyva*, No. 1:26-cv-00236-DCN, 2026 WL 1283869, at *2 (D. Idaho May 11, 2026) (finding government's claims of petitioner's dangerousness "ring hollow" given it had not previously detained petitioner despite a prior removal order and prior

MEMORANDUM DECISION AND ORDER - 7

conviction of a misdemeanor crime).

Finally, the Court seriously questions whether the record would support continued detention in any event. Respondents have submitted no declaration, exhibit, or other evidence, and their assertion of a growing danger rests on the fact of the convictions and the pending charge alone. Nor do Respondents represent that ICE has made any individualized assessment of Petitioner's dangerousness or risk of flight. They ask instead for leave to make that determination in the first instance, which concedes that no such determination has been made and leaves nothing in the present record to justify holding Petitioner while the agency makes one. Petitioner's convictions are misdemeanors, and his pending DUI charge is only a charge. *See Matter of Arreguin*, 21 I. & N. Dec. 38, 42 (BIA 1995) (declining to give substantial weight to an arrest absent a conviction or corroborating evidence). The state court evidently reached a similar assessment of the risk Petitioner presents, releasing him on a $500 bond pending trial. And Petitioner has lived in the United States for roughly five years, is pursuing asylum before the immigration court, and has a United States citizen partner and a one-year-old daughter who rely on him for support.

The government, however, is not left without any recourse. The Court recognizes that Petitioner's convictions, which arose from a domestic violence arrest, and his recent DUI arrest, which occurred while Petitioner was on probation, postdate the lifted detainer. That ICE did not act on those events when they occurred undercuts its argument that they now require detention, but it does not foreclose a properly supported determination going forward. If Respondents believe those events show that Petitioner

**MEMORANDUM DECISION AND ORDER - 8**

now poses a danger to the community or a flight risk, they may seek to re-detain him—

but only after providing him with notice and a pre-detention hearing before a neutral

decisionmaker, at which the government must establish, by clear and convincing

evidence, that detention is necessary to prevent danger to the community or flight. *See*

*Pinchi*, 792 F. Supp. 3d at 1037–38.

### ORDER

**IT IS ORDERED that**:

1. Petitioner's Petition for Writ of Habeas Corpus (Dkt. 1) is **GRANTED**.
   Respondents must immediately release Petitioner from custody.

2. Respondents may not re-detain Petitioner without first providing him notice
   and a pre-detention hearing before a neutral decisionmaker, at which the
   government must establish, by clear and convincing evidence, that detention is
   necessary to prevent danger to the community or flight.

3. Petitioner's Motion for Temporary Restraining Order (Dkt. 2) is **DENIED AS
   MOOT**.

DATED: July 29, 2026

B. Lynn Winmill
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 9